IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BITPAY, INC.,                          :
                                       :
        Plaintiff,                     :
                                       :
                                       :    CIVIL ACTION NO.
        v.                             :    1:15-CV-3238-SCJ
                                       :
MASSACHUSETTS BAY                      :
INSURANCE COMPANY,                     :
                                       :
        Defendant.                     :

## ORDER

This matter appears before the Court due to a discovery dispute between

the parties and on a Motion to Bifurcate and to Stay Discovery (Doc. No. [8]),

filed by Defendant Massachusetts Bay Insurance Company ("MBIC"). The Court

held a conference call on these matters on March 15, 2016.

As preliminary background, this case arises out of MBIC's refusal to pay

an insurance claim made by Plaintiff, Bitpay, Inc. ("Bitpay"). See Doc. No. [1],

p. 4, ¶¶19–22. Plaintiff alleges that its CFO received an email from someone

asking for a comment on a bitcoin industry document. Id. p. 3, ¶12. In fact, the

email was fraudulently sent from a hacked account. Id. p. 3, ¶13. Afer Bitpay's

CFO entered his credentials on a website controlled by the hacker, the hacker

was able to send false authorizations to Bitpay, causing the transfer and loss of $1,850,000 in bitcoin. Id. pp. 3–4, ¶¶14–17. Because Defendant refused to insure the loss, Plaintiff filed the present complaint, asserting two counts: (1) that the refusal to pay the claim was a breach of Plaintiff's insurance policy and (2) that the refusal to pay was done in bad faith. Id. pp. 5–6, ¶¶27–36.

In conjunction with its answer, Defendant filed the present motion, requesting that the Court try bifurcate the two counts, and that the Court stay discovery on the bad-faith claim pending resolution of the breach-of-contract claim. See Doc. No. [8]. Federal Rule of Civil Procedure 42(b) provides the Court with the authority to bifurcate the trial of separate claims in the interest of "convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "The decision to bifurcate is committed to the sound discretion of the trial court." Home Elevators, Inc. v. Millar Elevator Serv. Co., 933 F. Supp. 1090, 1091 (N.D. Ga. 1996). Bifurcation is "not the usual course that should be followed." Id. The burden to show that bifurcation is warranted is on the party requesting bifurcation. Id.

Here, Defendant notes that, under Georgia law, Plaintiff must first prove that its loss was covered by the insurance policy before it can prove that MBIC's

refusal to pay Plaintiff's claim was in bad faith. See Doc. No. [8], p. 3; see also O.C.G.A. § 33-4-6 (providing for attorney's fees and increased damages where an insurer makes a bad faith refusal to pay "a loss which is covered by a policy of insurance"). Thus, Defendant argues, needless expense may be prevented by staying discovery on the bad-faith count until there has been a determination as to whether Plaintiff's loss was even covered by the insurance policy. See Doc. No. [8], p. 4. Plaintiff responds, in part, that the facts underlying both the bad-faith claim and the breach-of-contract claim "are inextricably intertwined" and that staying discovery on the bad-faith claim would result in a "duplication of efforts," which would "increase the cost of discovery exponentially" and require the Court to "resolve discovery disputes piecemeal." Doc. No. [9], pp. 9–10. The Court agrees with Plaintiff that denying the motion to stay and proceeding with discovery on the bad-faith claim is the most efficient way to proceed in this case.

The bulk of Plaintiff's requests for production are for documents directly related to Plaintiff's claim, such as "communications regarding the commercial crime coverage," evidence relating to "the underwriting and/or actuarial analysis of the Policy," and MBIC's claim file or other documents relating to

3

MBIC's investigation of the claim. See Doc. No. [18-3], pp. 6–7. In a letter concerning the present discovery dispute, defense counsel asserted that such evidence is "inappropriately directed to claims handling/bad faith and not the coverage determination made by the claims department." See Exhibit A,[1] p. 1. While the requests are surely relevant to the bad-faith claim, some of the requests are also relevant to the breach-of-contract claim. In particular, MBIC's claim file seems directly relevant to "the coverage determination made by the claims department."

If the Court were to grant the Motion to Bifurcate and Stay Discovery, the Court would be required to parse each and every request for production, not to mention each question Plaintiff might potentially ask during a deposition, to determine if it "related to" the breach-of-contract claim or the bad-faith claim—or, if the request related to both claims, how to properly limit the request to only reach information related to the breach-of-contract claim. Such an exercise in hair-splitting would waste precious judicial resources, and result in unnecessarily duplicative discovery if Plaintiff in fact succeeds in proving that

---

[1] Defendant's letter to Plaintiff concerning the present discovery dispute was provided to the Court in advance of the conference call on this dispute. It is attached to this Order as Exhibit A, and is referred to as such throughout the Order.

4

the loss was covered. The increased discovery burden on Defendant is minimal since many, if not most, of the requests and potential deposition questions will relate to both claims. The facts demonstrating whether the loss is covered by the policy and the facts underlying MBIC's decision not to pay the claim will clearly overlap substantially. Simply put, Defendant has not met its burden of showing that bifurcation is warranted in this case. See Home Elevators, Inc., 933 F. Supp. at 1091.

Having decided that the most efficient course of conduct in this case is to allow discovery on both of Plaintiff's claims, the Court now turns to the particular discovery dispute at hand. During the conference call, Defendant's arguments centered largely around its contention that the information requested by Plaintiff is "irrelevant." However, Plaintiff's requests for "communications regarding the commercial crime coverage" — the provision at issue in this case — as well as for evidence relating to "the underwriting and/or actuarial analysis of the Policy," and MBIC's claim file or other documents relating to MBIC's investigation of the claim, are quite clearly relevant to the issues in this case. See Doc. No. [18-3], pp. 6–7. Defendant may, and in fact did, dispute whether such requests are "directed to" the bad-faith claim or the

breach-of-contract claim, but the requests are relevant. See Exhibit A, p. 1. Defendant's communications regarding the policy provision at issue, its underwriting analysis, its claim file, and most of the other production requests will tend to either prove or disprove Plaintiff's claim that Defendant refused to pay a claim that it knew was covered by the policy.

Although not discussed during the conference call, Defendant, in its letter to Plaintiff regarding the discovery dispute, also objected to Plaintiff's request for documents related to "Social Engineering Endorsements," because that product was not offered at the time of Bitpay's contract with MBIC, and thus is not at issue in this case. Id. p. 2. The Court agrees. Information regarding Defendant's other products, developed after the contract at issue in this case, is not relevant to the issue of whether Defendant breached its contract with Plaintiff. Nor is it relevant to the issue of whether Defendant's decision to deny Bitpay's claim was in bad faith. Thus, Plaintiff's Request for Production number 18 is beyond the scope of permissible discovery in this case. See Doc. No. [18-3], p. 8.

Defendant also objects to Plaintiff's requests for documents related to claims by other individuals handled by Defendant. Such evidence is relevant to the extent that it could show whether Defendant chose to pay or deny other

6

claims that are factually similar to Plaintiff's claim. Defendant's stronger objection is that production of such evidence may be overly burdensome. Even potentially relevant evidence may be beyond the scope of discovery. Discovery must be "proportional to the needs of the case," and the Court must consider "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). This issue concerns two of Plaintiff's Requests for Production: numbers 20 and 21. See Doc. No. [18-3], pp. 8–9.

Request for Production number 20 asks for all documents "relating to coverage under MBIC's commercial crime policies for fraudulent transfers occurring after receipt by the insured a fraudulent instructions from a third party." Id. p. 8. This request is carefully tailored to the particular facts of this case, and thus is highly relevant to the issues in the case at bar. See Doc. No. [1], pp. 3–4, ¶¶12–17. Thus, the burden or expense of producing the evidence is not outweighed by its likely benefit. See Fed. R. Civ. P. 26(b)(1). Defendant would only have to produce evidence of claims similar to Bitpay's claim, and, because the claims would be similar, they would be highly relevant.

Plaintiff's Request for Production number 21, in contrast, is overly broad. In request 21, Plaintiff asks for all documents "relating to coverage under MBC's

7

commercial crime policies for losses or claims resulting from (in whole or in part) the hacking of a computer system hosting services for an insured." Doc. No. [18-3], p.9. This would require Defendant to produce evidence of any and every claim in which a computer system hosting services for an insured was hacked, without regard to the manner or method in which the system was hacked. Probative value of the evidence to be produced would almost certainly be outweighed by the undue burden of producing such voluminous discovery. Accordingly, Request for Production number 21 is beyond the permissible scope of discovery, as currently phrased. The Court will allow Plaintiff to rephrase the request, if it so chooses, to make the request more narrowly tailored to the particular facts of this case.

For the reasons given above, Defendant's Motion to Bifurcate and to Stay Discovery on the bad-faith claim (Doc. No. [8]) is **DENIED**.[2] With the exceptions of Plaintiff's Requests for Production numbers 18 and 21, as explained above, Defendant is hereby **ORDERED** to produce all discovery responsive to Plaintiff's

---

[2] While the Court is denying the Motion to Bifurcate at the discovery stage, the Court is not ruling on whether to bifurcate the claims at trial. Allowing discovery on both claims allows for the most expedient resolution of this case, but trying the bad-faith claim and the breach-of-contract claim together may result in undue prejudice, and thus warrant bifurcation. See Fed. R. Civ. P. 42(b).

other requests. If Defendant intends to withhold any information on the grounds

that it is privileged, it must do so in compliance with Fed. R. Civ. P. 26(b)(5).

Each side will bear its own costs and attorneys' fees incurred as a result of this

discovery dispute.

     **IT IS SO ORDERED,** this __1 7th__ day of March, 2016.

<br>

                    HONORABLE STEVE C. JONES
                    UNITED STATES DISTRICT JUDGE